DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: darren.brenner@akerman.com
  natalie.winslow@akerman.com

*Attorneys for Plaintiff The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-HY11, Mortgage Pass-Through Certificates, Series 2006-HY11*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY11,<br><br>Plaintiff,<br><br>vs.<br><br>EMILY RUDDELL; SFR INVESTMENTS POOL 1, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; WIGWAM RANCH SQUARE HOMEOWNERS ASSOCIATION; DOE INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | Case No.:  2:17-cv-01074<br><br>**COMPLAINT** |

The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-HY11, Mortgage Pass-Through Certificates, Series 2006-HY11 (**BNY**) complains as follows:

...

...

# PARTIES AND JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. BNY is a citizen of New York, and on information and belief, none of the defendants is a citizen of New York. The amount in controvery exceeds $75,000.00.

2. BNY is a New York corporation. Its principal office is in New York. BNY is a citizen of the state of New York for purposes of diversity of citizenship. *See Carolina Casualty Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082 (9th Cir. 2014). Defendants Emily Ruddell (**borrower**), SFR Investments Pool 1, LLC (**SFR**), Mortgage Electronic Registration Systems, Inc. (**MERS**), and Wigwam Ranch Square Homeowners Association (**Wigwam Ranch Square**) are, on information and belief, not citizens of New York. The amount in controversy requirement is met. BNY seeks a declaration that its deed of trust, with a face value of $207,200.00, was not extinguished by a homeowner's association non-judicial foreclosure sale that is the basis for SFR's claim to title to the real property sub judice.

3. Defendant SFR is wholly owned by SFR Investments, LLC, a Nevada limited liability company, which is wholly owned by SFR Funding, LLC, a Delaware limited liability company, which is wholly owned by Xiemen LP, a Canadian limited partnership. Xiemen LP has two partners, Xiemen Investments, Ltd., a Canadian corporation, and John Gibson, a citizen of South Africa. BNY is informed and believes and therefore alleges SFR purchased the property at the HOA foreclosure sale, acquiring title via a foreclosure deed recorded December 10, 2012.

4. Defendant Wigwam Ranch Square is, on information and belief, a Nevada non-profit corporation. Wigwam Ranch Square is a junior lienholder that may claim an interest in the subject property.

5. Defendant MERS is, on information and belief, a Delaware corporation. MERS is a junior lienholder that may claim an interest in the subject property.

6. Defendant borrower is, on information and belief, a Nevada resident and citizen.

...

...

7. Does I through X, inclusive (the **Doe Defendants**), are individuals who may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are avoidable pursuant to NRS Ch. 112. BNY may seek leave to amend this complaint to reflect the true names and identities of the Doe Defendants when known.

8. Roe Corporations I through X, inclusive (the **Roe Defendants**), are corporate entities that may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are avoidable pursuant to NRS Ch. 112. BNY may seek leave of Court to amend this complaint to reflect the true names and identities of the Roe Defendants when known.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 for reasons stated above.

10. Venue is proper in this Court under 28 U.S.C. § 1391. The property that is the subject of this action is located at 8601 Little Fox Street, Las Vegas, Nevada 89123 (**the property**). Venue is proper in this Court under 28 U.S.C. § 1391(1) and (2) because this action seeks to determine an interest in property located within Clark County, Nevada and because this lawsuit arises out of a foreclosure of real property located within Nevada.

## **GENERAL ALLEGATIONS**

11. Under Nevada state law, homeowners' associations have the right to charge property owners residing within the community assessments to cover the homeowners' associations' expenses for maintaining or improving the community, among other things.

12. When these assessments go unpaid, the association may impose a lien and then foreclose on a lien if the assessments remain unpaid.

13. NRS Chapter 116 generally provides a non-judicial foreclosure scheme for a homeowners' association to conduct a non-judicial foreclosure where the unit owner fails to pay its monthly assessments.

...

...

14. NRS 116.3116 makes a homeowners' association lien for assessments junior to a first deed of trust beneficiary's secured interest in the property, with one limited exception: a homeowners' association lien is senior to a first deed of trust beneficiary's secured interest "to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" NRS 116.3116(2)(c).

### The Deed of Trust and Assignment

15. On or about March 27, 2006, the borrower purchased the property. The borrower financed ownership of the property by way of a loan in the amount of $207,200.00 evidenced by a note and secured by a deed of trust (the **senior deed of trust**) recorded March 31, 2006. A true and correct copy of the senior deed of trust is recorded with the Clark County Recorder as **Instrument No. 20060331-0002964**.

16. The senior deed of trust was assigned to BNY via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Clark County Recorder as **Instrument No. 201002020000353**.

### The HOA Lien and Foreclosure

17. Upon information and belief, the borrower failed to pay Wigwam Ranch Master Homeowners Association (**HOA**) all amounts due to it. On October 7, 2010, the HOA, through its agent Alessi & Koenig, LLC, recorded a notice of delinquent assessment (lien). Per the notice, the amount due to the HOA was $801.00, which includes $751.00 of collection and/or attorneys' fees, assessments, interest, late fees, and service charges, and $50.00 of collection costs. A true and correct copy of the notice of lien is recorded with the Clark County Recorder as **Instrument No. 201010070004211**.

...

...

18. On January 31, 2011, the HOA, through its agent Alessi, recorded a notice of default and election to sell under homeowners assessment lien. The notice states the amount due to the HOA was $1,933.00, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. A true and correct copy of the notice of default is recorded with the Clark County Recorder as **Instrument No. 201101310002286**. The notice of default also does not specify the super-priority amount claimed by the HOA and fails to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

19. On November 5, 2012, the HOA, through its agent Alessi, recorded a notice of trustee's sale. The notice states the amount due to the HOA was $3,979.00, which includes "[t]he total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale. A true and correct copy of the notice of sale is recorded with the Clark County Recorder as **Instrument No. 201211050001528**.

20. In none of the recorded documents nor in any notice did the HOA and/or its agent provide notice of the purported super-priority lien amount, where to pay the amount, how to pay the amount, or the consequences for failure to do so.

21. In none of the recorded documents did the HOA and/or its agent identify the amount of the alleged lien that was for late fees, interest, fines/violations or collection fees/costs.

22. In none of the recorded documents nor in any notice did the HOA and/or its agent specify whether it was foreclosing on the super-priority portion of its lien, if any, or on the sub-priority portion of its lien.

23. In none of the recorded documents nor in any notice did the HOA and/or its agent specify the senior deed of trust would be extinguished by the HOA's foreclosure.

24. In none of the recorded documents nor in any notice did the HOA and/or its agent identify any way by which the beneficiary under the senior deed of trust could satisfy the super-priority portion of the HOA's claimed lien.

...

25. On information and belief, had BNY or anyone else attempted to tender the amounts due under the HOA's claimed lien, the HOA and/or its agent would have rejected the attempted tender.

26. The HOA foreclosed on the property on or about December 5, 2012. A trustee's deed in favor of SFR was recorded December 10, 2012. A true and correct copy of the deed is recorded with the Clark County Recorder as **Instrument No. 201212100003663**.

27. Upon information and belief, Alessi indicated in the foreclosure deed that the sale price at the foreclosure sale was $6,200.00. The HOA's sale of the property to SFR for less than 3% of the face value of the senior deed of trust, and, on information and belief, for a similarly diminutive percentage of the property's fair market value, is commercially unreasonable and not in good faith as required by NRS 116.1113.

## **FIRST CAUSE OF ACTION**

### **(Quiet Title/Declaratory Judgment against All Defendants)**

28. BNY repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

29. Pursuant to 28 U.S.C. § 2201 and NRS 30.040 *et seq.*, this Court is empowered to declare the rights of parties and other legal relations of parties regarding the property.

30. An actual controversy has arisen between BNY and defendants regarding the property. The senior deed of trust is a first secured interest on the property. As a result of the HOA foreclosure sale, SFR claims an interest in the property, and on information and belief, asserts SFR owns the property free and clear of the senior deed of trust.

31. BNY's interest in the senior deed of trust encumbering the property constitutes an interest in real property.

32. BNY is entitled to a declaration that the HOA's foreclosure did not extinguish the senior deed of trust, or, alternatively, the HOA's foreclosure is void.

...

...

*NRS Chapter 116 Violates BNY's Right to Procedural Due Process*

33. BNY asserts that Chapter 116 of the Nevada Revised Statutes' scheme of HOA super priority non-judicial foreclosure violates BNY's procedural due process rights under the state and federal constitutions.

34. The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution protect BNY from being deprived of its deed of trust in violation of procedural due process guarantees of notice and an opportunity to be heard.

35. BNY asserts that there is no way to apply Nevada's scheme of non-judicial HOA super priority foreclosure that complies with Nevada and the United States' respective guarantees of procedural due process.

36. The Nevada Constitution does not expressly set forth a state action requirement. Even if it did, and consistent with the state action requirements of the Federal Constitution, the state of Nevada has become sufficiently intertwined with HOA foreclosure such that state and federal procedural due process protections for BNY's deed of trust apply, to wit:

   a) The super priority lien did not exist at common law, but rather is imposed by statute.

   b) In order to conserve governmental resources and fund the quasi-governmental HOA, Nevada's legislature made super priority mandatory, expanded the super-priority duration from six to nine months, and declared it could not contractually subordinate its lien by provisions within a HOA's covenants, conditions, and restrictions..

   c) The super priority lien has no nexus whatsoever to a private agreement between the HOA and BNY, but, again, is imposed by legislative enactment.

   d) Nevada and Clark County mandated the creation of the HOA as a quasi-governmental entity to perform governmental functions including maintaining the common open spaces and private streets within the HOA community.

...

...

37. Since the state of Nevada is responsible for the creation of the super priority lien and has made it mandatory, then the state of Nevada's HOA super priority foreclosure scheme is the result of state action subject to procedural due process safeguards.

38. On its face, Nevada's scheme of non-judicial HOA super priority foreclosure lacks any pre-deprivation notice requirements or post deprivation redemption options that are necessary components of due process:

  a) NRS 116.31162 and NRS 116.311635 do not require that an HOA provide BNY with written notice of the sum that constitutes the super priority portion of the assessment lien.

  b) Chapter 116 of NRS seeks to insulate its scheme of super priority non-judicial foreclosure by failing to provide any post-sale right of equity or redemption..

  c) Chapter 116 of NRS fails to provide BNY with a statutorily enforceable mechanism to compel an HOA to inform BNY of the sum of the HOA super priority amount.

39. BNY requests that this Court void the HOA foreclosure sale or declare that SFR's title was acquired subject to the senior deed of trust because NRS 116's scheme of HOA super priority foreclosure violates the procedural process clauses of the Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution.

*Additional Reasons the HOA Foreclosure Sale Did Not Extinguish the Senior Deed of Trust*

40. The HOA sale is void or did not extinguish the senior deed of trust for additional reasons stated below.

41. The foreclosure sale did not extinguish the senior deed of trust because the recorded notices, even if they were in fact provided, failed to describe the lien in sufficient detail as required by Nevada law, including, without limitation: whether the deficiency included a "super-priority" component, the amount of the super-priority component, how the super-priority component was calculated, when payment on the super-priority component was required, where payment was to be made or the consequences for failure to pay the super-priority component. Alternatively, the foreclosure sale is void.

42.     The foreclosure sale did not extinguish the senior deed of trust because, on information and belief, the HOA and/or its agent would have rejected any tender of the amounts entitled to super-priority and BNY or its predecessors in interest were not required to make a futile attempt to tender. Alternatively, the foreclosure sale is void.

43.     The foreclosure sale did not extinguish the senior deed of trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS 116.1113 in several respects, including, without limitation, the lack of sufficient notice, the sale of the property for a fraction of the loan balance or actual market value of the property, a foreclosure that was not calculated to promote an equitable sales prices for the property or to attract proper perspective purchasers, and a foreclosure sale that was designed and/or intended to result in maximum profit for the HOA, its agent, and SFR at the sale without regard to the rights and interest of those who have an interest in the loan and made the purchase of the property possible in the first place. Alternatively, the foreclosure sale is void.

44.     The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate BNY's rights to due process, as a result of the HOA's failure to provide sufficient notice of the super-priority component of the HOA's lien, the manner and method to satisfy it, and the consequences for failing to do so.  Alternatively, the foreclosure sale is void.

45.     The foreclosure sale did not extinguish the senior deed of trust because otherwise the sale would violate BNY's rights to due process, as a result of the HOA's improper calculation of the super-priority component, and its inclusion of charges that are not part of the super-priority lien under Nevada law.  Alternatively, the foreclosure sale is void.

46.     The foreclosure sale did not extinguish the senior deed of trust because SFR does not qualify as a bona fide purchaser for value, because it was aware of, or should have been aware of, the existence of the senior deed of trust and the commercial unreasonableness of the HOA sale. Alternatively, the foreclosure sale is void.

47.      BNY is entitled to a declaration, pursuant to 28 U.S.C. § 2201, NRS 30.040, and NRS 40.010, that the HOA sale did not extinguish the senior deed of trust.

48. BNY was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(Judicial Foreclosure against the Borrower, MERS, and Wigwam Ranch Square)**

49. BNY repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

50. The borrower has not paid the loan in accordance with the terms of the note and senior deed of trust.

51. BNY is entitled to enforce its security interest through the senior deed of trust.

52. BNY's senior deed of trust is paramount to the borrower's interest in the property.

53. BNY's senior deed of trust is paramount to MERS and Wigwam Ranch Square's interest in the property, if any, as junior lienholders.

54. BNY is entitled to an order directing a foreclosure sale of the property based upon the borrower's default.

55. Upon information and belief, the borrower does not occupy the property, and thus this action is exempted from the requirements of the Nevada Foreclosure Mediation Program.

## THIRD CAUSE OF ACTION

**(Injunctive Relief against SFR)**

56. BNY repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

57. BNY disputes SFR's claim it owns the property free and clear of the senior deed of trust.

58. Any sale or transfer of the property by SFR, prior to a judicial determination concerning the respective rights and interests of the parties to this case, may be rendered invalid if the senior deed of trust still encumbers the property in first position and was not extinguished by the HOA sale.

...

59. BNY has a substantial likelihood of success on the merits of the complaint, and damages would not adequately compensate for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the property.

60. BNY has no adequate remedy at law due to the uniqueness of the property involved in this case and the risk of the loss of the senior security interest.

61. BNY is entitled to a preliminary injunction prohibiting SFR, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust.

62. BNY is entitled to a preliminary injunction requiring SFR to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

## **PRAYER FOR RELIEF**

BNY requests the Court grant the following relief:

1. An order declaring that SFR purchased the property subject to BNY's senior deed of trust;

2. In the alternative, an order that the HOA foreclosure sale, and any resulting foreclosure deed, was void ab initio;

3. That the Court enter an order directing a foreclosure sale of the property based on BNY's claim for judicial foreclosure;

4. A preliminary injunction prohibiting SFR, its successors, assigns, or agents from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust;

5. A preliminary injunction requiring SFR to pay all taxes, insurance, and homeowner's association dues during the pendency of this action;

6. Reasonable attorneys' fees as special damages and the costs of suit; and

...

...

...

7.   For such other and further relief the Court deems proper.

DATED April 18, 2017.

**AKERMAN LLP**

*/s/ Natalie L. Winslow, Esq.*
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Plaintiff The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-HY11, Mortgage Pass-Through Certificates, Series 2006-HY11*